IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JANICE A. WALDEE                                                                     PLAINTIFF

      v.                                         CIVIL NO. 07-2055

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Janice A. Waldee brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).

**Procedural Background:**

Plaintiff filed her DIB application on November 3, 2004, alleging an inability to work since January 1, 1999, due to congestive heart failure, hypertension, high cholesterol, psoriasis and anxiety. (Tr. 39). Plaintiff's application was denied initially and on reconsideration. Pursuant to plaintiff's request, a hearing de novo before an administrative law judge (ALJ) was held on June 29, 2006, at which plaintiff, represented by counsel, appeared and testified. (Tr. 173-199). For DIB purposes, plaintiff's insured status expired on June 30, 2002. (Tr. 10, 46).

By written decision dated October 24, 2006, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 12). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found that

prior to plaintiff's date last insured plaintiff retained the residual functional capacity (RFC) to perform a full range of light work activity. (Tr. 12). The ALJ found plaintiff could perform her past relevant work, as performed by plaintiff, as a sandwich maker and a sales clerk at a warehouse store. (Tr. 14).

Plaintiff appealed the decision of the ALJ to the Appeals Council. When the Appeals Council declined review on April 27, 2007, the ALJ's decision became the final action of the Commissioner. (Tr. 2-4). Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties submitted appeal briefs. (Doc. # 3,4).

On October 25, 2007, plaintiff moved to supplement the record with additional medical evidence and to have her case remanded to the Commissioner for consideration of this evidence.[1] (Doc. 5). This case is before the undersigned for report and recommendation.

**Evidence Presented:**

At the administrative hearing before the ALJ on June 29, 2006, plaintiff was fifty-seven years of age and obtained a general equivalency diploma. (Tr. 179). The record reflects plaintiff's past relevant work was that of sandwich maker and a sales clerk at a warehouse store. (Tr. 181).

The pertinent medical evidence in this case reflects the following. Progress notes dated February 1, 1999, report plaintiff's complaints of chest wall pain. (Tr. 127). Dr. William R. Daniel noted plaintiff's pain had been sharp and was possibly associated with pleurisy. Dr. Daniel noted plaintiff's heart rhythm was regular and her lungs were clear. Plaintiff also denied

---

[1] Plaintiff supplemented the record on October 25, 2007. (Doc. # 5). **Plaintiff's counsel is put on notice that the standard used to submit additional evidence is set out in 42 U.S.C. § 405(g). In the future, medical records will be returned to plaintiff's counsel if the records are not properly filed before the court**.

pain or pressure or a decrease in her exercise tolerance. Dr. Daniel started plaintiff on non-steroidal anti-inflammatories for two weeks.

Progress notes dated August 3, 1999, report plaintiff's EKG looked great. (Tr. 125). Plaintiff complained of pressure like chest pain and shortness of breath. Upon examination, plaintiff's heart rhythm was regular and lung fields were clear. Dr. Daniel started plaintiff on Imdur and TNT 1/150 grain. Plaintiff was to return in one month.

On November 24, 1999, plaintiff was seen for an abscess in her right molar. Dr. Daniel reported he did an I & D under local anesthesia. (Tr. 124). Dr. Daniel noted plaintiff had some associated "cellulites" in the right cheek area. Plaintiff was placed on Levaquin. Dr. Daniel recommended plaintiff see a dentist.

On August 9, 2001, treatment notes indicate plaintiff was in as a new patient. (Tr. 109, 134). Plaintiff reported no significant chest pain or shortness of breath but a little weakness. Plaintiff reported a history of hypertension, hyperlipidemia, chest pain, anxiety, fibrocystic breast disease and psoriasis. Plaintiff reported she was self-employed and sold fire safety equipment.

Progress notes dated August 23, 2001, report plaintiff was in for a routine pelvic and pap annual exam. (Tr. 110, 132). Plaintiff reported she and her husband recently moved from Missouri and were in business for themselves selling fire safety equipment. Plaintiff reported her main concern was her weight gain. (Tr. 110). Plaintiff also reported increased shortness of breath and weakness but denied chest pain. The medical examiner noted labs were done on plaintiff the last time she was in and everything looked "pretty good." Plaintiff underwent an EKG and the examiner noted it was within normal limits. (Tr. 110). Plaintiff's extremities were noted to be within normal limits with no peripheral edema and good peripheral pulses. Fungus was noted

on both big toes. Plaintiff was noted to have a severe case of psoriasis and reported she used an over-the-counter cream to keep it under control. The examiner reviewed the importance of diet and exercise and also recommended a stress test. Plaintiff was to continue taking Lipitor, Atenolol and Hydrochlorothiazide.

Progress notes dated September 18, 2001, report plaintiff cancelled her stress test for the second time. (Tr. 111, 133). Plaintiff was told the risks of not undergoing the test. Plaintiff said she understood and would let the office know if she changed her mind.

Progress notes dated November 27, 2001, report plaintiff came in for a medication refill. (Tr. 111, 133). Plaintiff reported she had been out of medication for a little while. Plaintiff denied any chest pain or shortness of breath. The examiner noted plaintiff had no peripheral swelling and her blood pressure was 156/84. The examiner noted plaintiff was to undergo further testing regarding spots seen on her last mammogram. Plaintiff was given refill prescriptions for Lipitor, Atenolol and Hydrochlorothiazide. She was to follow-up in February.

Progress notes dated April 17, 2002, report plaintiff had a negative heart cath in 1992. (Tr. 104, 108). Dr. R. Todd Hammons notes since the heart cath plaintiff reported no further problems or chest discomfort. Plaintiff did report having extreme difficulty losing weight. Plaintiff also reported poor energy and fatigue. Upon examination, Dr. Hammons noted plaintiff's blood pressure was 142/92. Plaintiff's heart rate and rhythm were regular and her chest was clear.

Progress notes dated July 23, 2002, report plaintiff's hypertension was well controlled with the addition of Toprol. (Tr. 103). Dr. Hammons indicated his goal was to keep plaintiff's

LDL up between 75 and 100. Dr. Hammons recommended plaintiff should come back for a follow-up in several weeks.

The remaining medical evidence is dated after plaintiff's insured status expired. (Tr. 98-102, 105-107, 113-115, 120-124, 135-141, 144-172).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

**Discussion:**

We must first discuss plaintiff's insured status and its relation to her DIB application. In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 2002. (Tr. 10). Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of January 1, 1999, her alleged onset date of disability, through June 30, 2002, the last date she was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

With the above dates in mind, we will now discuss plaintiff's motion to submit new and material evidence. Reviewing courts have the authority to order the Commissioner to consider additional evidence but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Woolf v. Shalala*, 3 F.3d 1210 (8th Cir. 1993); *Chandler v. Secretary of Health and Human Services,* 722 F.2d 369, 371 (8th Cir. 1983). "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination." *Woolf,* 3 F.3d at 1215.

In the present case, the new evidence plaintiff wishes to supplement consists of medical source statements, both physical and mental, completed by a Mr. Billy Noel, APN.[2] Plaintiff alleges Nurse Noel reviewed the medical records and then completed the assessments. A review of the physical assessment indicates that the assessment is for the time period of September 21, 2007, which is well after plaintiff's date last insured of June 30, 2002, had expired. Nurse Noel

---

[2] Plaintiff's alleges Nurse Joel is a doctor; however, he is actually an advanced practice nurse (APN).

did not date the mental assessment. Accordingly, we find a remand for consideration of additional medical records pursuant to sentence six of 42 U.S.C. § 405(g) is not warranted.

We now address the ALJ's assessment of plaintiff's subjective complaints during the time period in question. In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

With regard to plaintiff's alleged disabling impairments, the record reveals that during the relevant time period plaintiff sought treatment for chest wall pain in February of 1999. At that time Dr. Daniel noted plaintiff's heart rhythm was regular and her lungs were clear. Plaintiff also denied pain or pressure or a decrease in her exercise tolerance. Dr. Daniel started plaintiff on non-steroidal anti-inflammatories for two weeks. On August 3, 1999, Dr. Daniel noted

AO72A
(Rev. 8/82)

plaintiff's complaints of chest pains and shortness of breath. At that time, Dr. Daniel reported plaintiff's heart rhythm was regular and her lung fields were clear.

Plaintiff then established herself as a new patient in August of 2001,[3] with complaints of feeling a little weak but denied chest pain or shortness of breath. Plaintiff's heart rate and rhythm were regular. Plaintiff was diagnosed with hypertension, hyperlipidemia, weakness and anxiety and her prescriptions for Atenolol, hydrochlorothiazide and Lipitor were renewed. Plaintiff returned for a follow-up on August 23, 2001, with the main complaint of weight gain. Plaintiff also reported increased shortness of breath and weakness but denied chest pain. The medical examiner noted plaintiff's labs looked "pretty good" and her EKG was within normal limits. Plaintiff's extremities were noted to be within normal limits with no peripheral edema and good peripheral pulses. In November of 2001, plaintiff denied chest pain and shortness of breath and no peripheral edema was noted. Progress notes from April of 2002 report plaintiff had not had problems with chest discomfort since 1992 but that plaintiff did report extreme difficulty losing weight and having poor energy and fatigue. However in December of 2002, almost six months after her insured status had expired Dr. Hammons noted plaintiff had "lots of energy now." (Tr. 106). Based on all the evidence of record, we find substantial evidence supporting the ALJ's determination that plaintiff did not have a disabling heart condition prior to her date last insured.

With regard to plaintiff's psoriasis, on August 23, 2001, the medical record indicate that she had a severe case of psoriasis. At the time plaintiff, reported she used an over-the-counter

---

[3] The court is unable to determine the name of the medical examiner but the records indicate they were faxed from the office of Dr. Allen Haddix. (Tr. 109).

9

AO72A
(Rev. 8/82)

cream that kept it under control. *see Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). While plaintiff's psoriasis may have worsened after her insured status expired, the evidence does not support plaintiff's psoriasis was a disabling impairment prior to June 30, 2002.

As for plaintiff's hypertension, in July of 2002, Dr. Hammons noted plaintiff's hypertension was well controlled with medication. We note, impairments that are controllable or amenable to treatment do not support a finding of disability. *See Pepper o/b/o Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003); *Fenton v. Apfel*, 149 F.3d 907, 912 (8th Cir.1998)(coronary artery disease, diabetic retinopathy, peripheral neuropathy, cholesterol, and hypertension controlled with medication); *Jenkins v. Chater*, 76 F.3d 231, 232 (8th Cir. 1996).

Plaintiff asserts the ALJ failed to address plaintiff's anxiety, inability to handle and finger, swelling of her legs and fatigue. The record shows plaintiff was diagnosed with weakness and anxiety in August of 2001. However, there is no indication that plaintiff complained of any mental limitations, including anxiety, concentration and memory problems, at any other time during the relevant time period. Plaintiff even indicated in forms she completed connected to her DIB application, dated May of 2005, that she had not sought medical treatment for emotional or mental problems. (Tr. 85). There is also no indication that plaintiff reported an inability to handle and finger prior to June 30, 2002. As for the swelling of the legs and fatigue, during the relevant time period no edema was noted and plaintiff was reported to have lots of energy in December of 2002.

With regard to plaintiff's daily activities, there is no indication that plaintiff was unable to perform activities of daily living prior to the expiration of her insured status. Even after her

10

insured status expired, the evidence reflects plaintiff was able to take care of her personal needs, prepare simple meals, wash clothes, drive, shop for groceries and clothes with help, cross-stitch, crochet, read, watch television, talk on the phone and go to church. (Tr. 69-72). Plaintiff also indicated she could lift, but not over twenty pounds, and could walk about half a mile. (Tr. 73). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disability prior to June 30, 2002. *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

Therefore, although it is clear that plaintiff suffered with some degree of pain prior to June 30, 2002, she has not established that she was unable to engage in any gainful activity during the relevant time period. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a

11

person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a full range of light work prior to June 30, 2002, the ALJ considered plaintiff's subjective complaints, the medical records of her treating and examining physicians, and the evaluation of a non-examining consultant. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's treating and examining physicians placed no restrictions on her activities during the relevant time period that would preclude performing the RFC determined. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on our above discussion of the medical evidence and plaintiff's daily activities, we believe substantial evidence supports the ALJ's RFC assessment.

Finally, substantial evidence supports the ALJ's finding that plaintiff can return to her past relevant work as a sandwich maker. According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the occupation *as generally required by employers throughout the national economy*.

20 C.F.R. § 404.1520(e); S.S.R. 82-61 (1982); *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

The ALJ compared plaintiff's RFC to the physical and mental demands of plaintiff's past relevant work and determined plaintiff could perform the work as she actually performed it. (Tr. 14). Accordingly, the ALJ properly concluded that with an RFC for light work, plaintiff could perform her past relevant work as a sandwich maker.

**Conclusion:**

Based on the foregoing, we recommend, affirming the ALJ's decision, and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of March 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)